1 | ADAM A. LEWIS (BAR NO. 88736)
  | ALewis@mofo.com
2 | VINCENT J. NOVAK (BAR NO. 233003)
  | VNovak@mofo.com
3 | MORRISON & FOERSTER LLP
  | 425 Market Street
4 | San Francisco, California  94105-2482
  | Telephone: 415.268.7000
5 | Facsimile: 415.268.7522

6 | Attorneys for Creditor
  | U.S. Bank National Association, not
7 | Individually but Solely as Trustee for the
  | Maiden Land Commercial Mortgage-Backed
8 | Securities Trust 2008-1

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA BARBARA DIVSIION

| In re | Case No.  09-12665 |
|---|---|
| OXNARD GSRS HOLDINGS, LLC, | Chapter   11 |
| Debtor. | U.S. BANK'S RESPONSE RE: DEBTOR'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF CASH COLLATERAL |
|  | Date:     October 16, 2009<br>Time:    10:00 a.m.<br>Place:   Hon. Robin Riblet<br>             1415 State Street<br>             Courtroom 201<br>             Santa Barbara, CA |

U.S. Bank National Association, not Individually but Solely as Trustee for the Maiden Land Commercial Mortgage-Backed Securities Trust 2008-1 (the "Bank"), hereby responds to Debtor's Supplemental Memorandum of Points and Authorities in Support of Motion for Interim and Final Use of Cash Collateral (the "Supplemental MPA") of debtor and debtor in possession Oxnard GSRS Holdings, LLC (the "Debtor").

U.S. BANK'S RESONSE TO SUPP. MPA RE
CASH COLLATERAL
sf-2745564

1

The Bank does not object to the further interim use of cash collateral for another month or so (depending on when the Court wishes to schedule a further continued interim hearing) in accordance with the budget and prior interim cash collateral orders in this case. However, the Bank believes that there should be two additional conditions for further interim cash collateral use, and it also wishes to make some brief comments on the Supplemental MPA so that the Court has a balanced picture of the Debtor's situation going forward.

*Comments.* The news in the Supplemental MPA is troubling, suggesting the leading edge of more serious problems.

<u>July Results</u>. The Supplemental MPA touts the Debtor's July performance (Supplemental MPA 2:13-4:15) as being better than budget. It reports higher occupancies than budget. However, it also reports lower-than-budgeted average daily room rates. The Debtor does not discuss this latter figure. The Debtor also reports higher-than-budgeted expenses for July. The Debtor's explanation in part for this variance is that it was caused by extraordinary expenses related to the departure of the Debtor's general manager. However, one would expect prudent budgeting to contain reserves for items such as departures of key personnel, since such things happen. Rarely does anything go smoothly. However, the only such "reserve" is in the budget's cumulative permissible 10% variance (a fairly large "slush fund" for a normal operator). It remains to be seen whether some of the excessive expenses the Debtors attribute to extraordinary circumstances and higher occupancies were, indeed, transitory. Moreover, the departure of the general manager is itself a disconcerting event. It suggests that someone with intimate knowledge of the hotel's operations lacks confidence in its future.

<u>August Results</u>. The Supplemental MPA's passages on August performance (at 4:16-6:10) have even more – and obvious – negative implications for the future. Both occupancy and room rates are down substantially from the budgeted figures (occupancy was 63% as contrasted with budget of 73.5%, and room rates were $97.85 as compared with budget of $106). There is no explanation for these developments. In that connection, the Debtor's monthly payment to the Bank due September 1 was (perhaps predictably) a few days late (beyond even the grace period) this time, having not been paid until the 10th.

1         And although the Supplemental MPA's dismissal of the higher-than-projected August

2    expenses as being attributable to paying its counsel $35,000 from the latter's $60,000 prepetition

3    retainer rather than from the Bank's cash collateral may be correct as far as it goes, the fact

4    remains that the Debtor is consuming cash at a greater rate than it may be able to sustain.  The

5    retainer, already much diminished even though the Bank has not been aggressive in the case, will

6    soon be exhausted.  At that point, the Debtor will have to try to look to cash collateral to pay

7    counsel.

8         *Conditions.*  The Bank asks that two conditions to further interim use of cash collateral be

9    included in any order.  The first has to do with the Debtor's assertion that it will not have to use

10   the Bank's debt service and FF&E reserves cash collateral to pay for operations.[1]  (Supplemental

11   MPA 6:17-22).  The Bank asks that this statement of intent be transformed into an obligation on

12   the Debtor's part, that is, that notwithstanding its authority to use cash collateral under the order,

13   the Debtor be prohibited from invading those reserves without either the Bank's consent in its

14   own discretion or an order of the Court after notice and a hearing upon a finding that the Bank is

15   adequately protected.

16        The second condition concerns reporting.  The Debtor's reporting in this case has been on

17   an accrual basis.  However, the norm for commercial real estate is to keep cash basis books even

18   if the owner also keeps books on an accrual basis.  Moreover, cash basis reporting will give the

19   Bank a much better and more prompt insight into what is going on in the Debtor's operations.

20   Accordingly, the Bank asks that any further use of cash collateral by the Debtor be conditioned on

21   the Debtor's commencing to provide its reports on a cash basis (either in addition to or in lieu of

22   its accrual reporting (this is an issue the Bank has discussed with the Debtor).

23

24

25

26 ─────────────────────

27   [1] There are actually three funded reserves at the moment.  The funds in the third, the insurance reserve, are only about $14,000 at the moment.

28

U.S. BANK'S RESONSE TO SUPP. MPA RE
CASH COLLATERAL                           3
sf-2745564

| | | |
|---|---|---|
| 1 | Dated: October 1, 2009 | ADAM A. LEWIS |
| | | VINCENT J. NOVAK |
| 2 | | MORRISON & FOERSTER LLP |
| 3 | | |
| 4 | | By:  /s/ Adam A. Lewis |
| | | ADAM A. LEWIS |
| 5 | | |
| | | Attorneys for Creditor |
| 6 | | U.S. Bank National Association, not |
| | | Individually but Solely as Trustee for |
| 7 | | the Maiden Land Commercial |
| | | Mortgage-Backed Securities Trust |
| 8 | | 2008-1 |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

U.S. BANK'S RESONSE TO SUPP. MPA RE
CASH COLLATERAL                                  4
sf-2745564

| In re: OXNARD GSRS HOLDINGS, LLC, Debtor(s). | CHAPTER 11 CASE NUMBER 1:09-bk-12665-RR |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482

A true and correct copy of the foregoing document described **U. S. Bank's Response Re: Debtor's Supplemental Memorandum of Points and Authorities in Support of Motion for Interim and Final Orders Authorizing the Use of Cash Collateral,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On October 1, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Joseph M. Sholder    sholder@g-tlaw.com
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On October 1, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

By U. S. Mail: Hon. Robin Riblet, U.S. Bankruptcy Court, 1415 State Street, Santa Barbara, CA, 93101, Attention: Intake

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 1, 2009 | Margaret McIlhargie | /s/ Margaret McIlhargie |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
sf-2731309

**F 9013-3.1**