1    **GRIFFITH & THORNBURGH, LLP**
     ATTORNEYS AND COUNSELORS                    (SPACE BELOW FOR FILING STAMP ONLY)

2    8 EAST FIGUEROA STREET, SUITE 300
     POST OFFICE BOX 9

3    SANTA BARBARA, CA 93102-0009
     TELEPHONE: 805-965-5131

4    TELECOPIER: 805-965-6751

5    Joseph M. Sholder, Bar No. 126347

6    Attorneys for Oxnard GSRS Holdings, LLC, Debtor and Debtor-in-Possession

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                          **NORTHERN DIVISION**

11

12   In re                          )    BK No. ND 09-12665-RR
                                     )
13   Oxnard GSRS Holdings, LLC,      )    Chapter 11
                                     )
14   DEBTOR and DEBTOR-IN-           )    STIPULATION RE THE CONTINUED
     POSSESSION.                     )    USE OF CASH COLLATERAL
15                                   )    PURSUANT TO 11 U.S.C. §363(c)
                                     )    FED.R.BANKR.P. 4001(b) AND
16                                   )    LOCAL RULES 2081-1 AND 4001-2
                                     )
17                                   )    Date:    June 8, 2010
                                     )    Time:    10:00 a.m.
18                                   )    Place    1415 State Street,
                                     )             Courtroom 201
19                                   )
                                     )
20                                   )
                                     )
21   ——————————————————————————

22        Debtor and Debtor in Possession Oxnard GSRS Holdings, Inc.

23   ("Debtor") and U.S. Bank National Association, not individually

24   but solely as trustee for the Maiden Lane Commercial Mortgage-

25   Backed Securities Trust 2008-1 (the "Bank") hereby stipulate

26   and agree with reference to the following facts:

27        A.    The Debtor commenced this voluntary chapter 11 case

28   on July 6, 2009 (the "Bankruptcy Case").

                              - 1 -

sf-2845138

1    B.   No trustee has been appointed and the Debtor remains
2  debtor in possession.

3    C.   Pursuant to an order of this court entered on July
4  14, 2009, and pursuant to subsequent orders entered by this
5  court (collectively, the "Orders"), the Debtor has been using
6  the Bank's cash collateral in amounts set forth in a budget,
7  and then a revised budget (the "Budget"), both of which were
8  previously submitted by the Debtor to the Bank and this court.

9    D.   The Debtor and the Bank have been negotiating
10 regarding the terms of an "Agreement to Release Lien and
11 Conditional Forbearance Agreement" (the "Forbearance
12 Agreement").  The Forbearance Agreement contemplates that the
13 Debtor will enter into a Cash Management Agreement and a
14 Collection Account Agreement (the latter two collectively, the
15 "Lock Box Agreement"), copies of which latter two are attached
16 hereto as Exhibits A and B.  However, this Stipulation is not
17 conditioned upon the actual entry into a Forbearance Agreement,
18 the Debtor having agreed to the Lock Box Agreement separately.
19 The Bank is willing to permit the Debtor to use the cash
20 collateral on the terms set forth in the Lock Box Agreement.

21   E.   The Lock Box Agreement permits the Debtor to continue
22 to use the cash collateral pursuant to the Budget with certain
23 modifications to the Orders.  In sum, the Debtor's receipts
24 will be deposited into an account controlled by the Bank.
25 Pursuant to paragraph 3 of the Cash Management Agreement, the
26 Bank will disburse from that account amounts necessary to pay
27 insurance and taxes, the operating expenses set forth in the
28 Budget to the Debtor, and extraordinary expenses.  The Bank

-2-

sf-2845138

1   will also use funds to reimburse itself for expenses.  Pursuant

2   to paragraph 3 of the Cash Management Agreement, the Debtor's

3   right to use the cash collateral pursuant to the Lock Box

4   Agreement will terminate if the Debtor violates the terms of

5   the Forbearance Agreement (if it is entered into), the Lock Box

6   Agreement, any order of this court, the Bank obtains relief

7   from the automatic stay or if the Bankruptcy Case is dismissed.

8        F.   The Lock Box Agreement does not contain any of the

9   provisions identified in Local Bankruptcy Rule 4001-2(b).

10       NOW, THEREFORE, THE PARTIES STIPULATE AND AGREE that (a)

11  the Debtor may use the cash collateral pursuant to the terms of

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

- 3 -

sf-2845138

1  the Lock Box Agreement; and (b) the Lock Box Agreement shall

2  remain binding upon the Debtor regardless of whether the Debtor

3  and the Bank enter into a Forbearance Agreement.

4

5  Dated: *May 26 2010*          OXNARD GSRS HOLDINGS, LLC

6

7                                By _____

8                                   OXNARD GSRS, LLC, by David
                                     Dodart, its managing member
9

10 Dated: _____          U.S. Bank National Association,
                                   not individually but solely as
11                                    trustee for the Maiden Lane
                                      Commercial Mortgage-Backed
12                                    Securities Trust 2008-1

13

14                             By:  Bank of America, N.A., as
                                 servicer for the Maiden Lane
15                               Commercial Mortgage-Backed Securities
                                 Trust 2008-1
16

17

18                             By _____

19                             Its ___**Robert H. Cox**___
                                        **Director**
20

21

22

23

24

25

26

27

28

- 4 -

## COLLECTION ACCOUNT AGREEMENT

THIS COLLECTION ACCOUNT AGREEMENT (this "Agreement"), dated as of May __, 2010, is made by and among RABOBANK, N.A. ("Collection Account Bank"), OXNARD GSRS HOLDINGS, LLC, a California limited liability company ("Borrower") and U.S. BANK NATIONAL ASSOCIATION, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1 (together with its successors and assigns, "Lender").

### RECITALS

A.    Pursuant to that certain Promissory Note executed by Borrower in favor of Bear Stearns Commercial Mortgage Inc. (the "Prior Lender") dated as of June 5, 2007 (the "Note"), Borrower became indebted to Prior Lender in the original principal amount of $8,750,000 (the "Loan"). The Loan is secured by, among other things, that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of June 5, 2007, executed by Borrower for the benefit of Mortgage Electronic Registration Systems, Inc., as record beneficiary on behalf of Prior Lender as the true beneficiary, and recorded in the Official Records of Ventura County, California (the "Official Records"), on June 6, 2007, as Document No. 2007060-00114330-0 (the "Security Instrument"). Capitalized terms not defined herein shall have the meanings set forth in the Note or Security Agreement, as applicable.

B.    Borrower and Collection Account Bank are parties to that certain Nationwide Wholesale Lockbox Service Agreement Letter dated as of March __, 2010, a true and correct copy of which is attached hereto as Exhibit A (the "Account Agreement"), pursuant to which Borrower has established the Collection Account (as defined below).

C.    Lender and Borrower desire to retain Collection Account Bank to provide the services described herein.

NOW THEREFORE, in consideration of the mutual premises contained herein and for other good and valuable consideration the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    Defined Terms. As used herein, "Business Day" means any day other than a Saturday, a Sunday or a legal holiday on which national banks are not open for general business. Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Loan Agreement. The meanings given to terms defined herein shall be equally applicable to both singular and plural forms thereof.

2.    Duties of Collection Account Bank.

(a)    Collection Account Bank shall receive in the Collection Account all deposits presented by or on behalf of Borrower or any of its agents, all merchant account payments and deposits, and all other deposits made to the Collection Account to or for the benefit of Borrower (collectively, the "Receipts").

(b)    Borrower and Collection Account Bank each hereby acknowledge and agree that (i) Collection Account Bank has established and shall maintain a deposit account (the "Collection Account," Account No. 5889538181), into which Collection Account Bank shall deposit all Receipts received by it (other than security deposits), (ii) the Collection Account established by Collection Account Bank shall be entitled "**Oxnard GSRS Holdings, LLC, for the benefit of U.S. Bank National Association, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-**

EXHIBIT A
page 5

Collection Account Agreement

**Backed Securities Trust 2008-1, as lender**" and (iii) Collection Account Bank shall hold amounts deposited in the Collection Account in express trust for Lender and shall not commingle such amounts with any other amounts held on behalf of Lender or any other Person. The Collection Account will be assigned the tax identification number of Borrower, and all income earned on the deposits in the Collection Account shall be income of Borrower.

(c)    Collection Account Bank shall send a monthly report to Borrower and Lender of the credits and charges to the Collection Account for the previous Collection Period. Collection Account Bank shall also send to Borrower and/or Lender such other information as Borrower and/or Lender may reasonably request from time to time with respect to the Collection Account.

(d)    Collection Account Bank shall maintain a record of each Receipt which is processed by Collection Account Bank for a period of one (1) year from the date of processing.

(e)    Subject to Section 3 below, Collection Account Bank shall, and Borrower authorizes and directs Collection Account Bank to, transfer on a daily basis by wire transfer or via the ACH system all amounts constituting collected funds on deposit in the Collection Account to the account set forth on Exhibit B ("Loan Account"). Borrower hereby irrevocably instructs and authorizes Collection Account Bank to make transfers into the Loan Account in accordance with this Section 2(e). THE FOREGOING INSTRUCTIONS ARE IRREVOCABLE AND NOT SUBJECT TO MODIFICATION OR RESCISSION IN ANY MANNER, EXCEPT THAT LENDER OR ITS DESIGNEE MAY, BY NOTICE TO COLLECTION ACCOUNT BANK, MODIFY OR RESCIND SUCH INSTRUCTIONS. Simultaneously with any transfer to the Loan Account pursuant to this clause (e) above, Collection Account Bank shall notify Lender and Borrower of the amount transferred via telecopy, a wire transfer or ACH system advice.

3.    Fees. Borrower agrees to pay (and Collection Account Bank agrees to look solely to Borrower for the payment of) any and all fees owed to Collection Account Bank, and to reimburse Collection Account Bank for all reasonable, out-of-pocket expenses incurred by Collection Account Bank in connection with such obligations, in each case as determined pursuant to the Account Agreement. Collection Account Bank is authorized to debit the Collection Account for such fees prior to remitting funds to the Loan Account.

4.    Termination.

(a)    Collection Account Bank may resign from its obligations hereunder at any time after thirty (30) days prior written notice to the other parties hereto, but in no event shall Collection Account Bank be released of its obligations hereunder unless and until a substitute collection account bank, satisfactory to Lender in its reasonable discretion, has been designated and assumed in writing the obligations of Collection Account Bank hereunder, or has entered into, with Borrower and Lender, a new collection account agreement in form and substance satisfactory to Lender in its reasonable discretion.

(b)    Lender may terminate this Agreement at any time upon thirty (30) days prior written notice to the other parties hereto. In such event, Borrower shall appoint a successor bank acceptable to Lender to replace Collection Account Bank promptly upon written notice from Lender. If Borrower has not appointed an acceptable replacement bank prior to the effective date for the termination of this Agreement, Lender may appoint such replacement bank.

(c)    Prior to satisfaction in full of all obligations arising under the Loan, Borrower may not modify or terminate this Agreement or the Account Agreement, nor close the Collection Account, without Lender's prior written approval.

EXHIBIT A
page 6

5.    Warranties and Liabilities of Collection Account Bank.  The parties hereto agree that Collection Account Bank's sole responsibility to Lender, Borrower or any third party for errors made by Collection Account Bank in processing any Receipt shall be to process a correcting entry in the next regularly scheduled processing date of such error. Collection Account Bank shall not be liable to Lender, Borrower or any third party if Lender, Borrower or any third party fails to give timely advice to Collection Account Bank of any error alleged to have been made by Collection Account Bank in the processing of a Receipt.  The foregoing shall not relieve Collection Account Bank of any liability arising out of any failure to perform its obligations hereunder.

6.    Sole Dominion; Security Interest; Set-off.  Collection Account Bank and Borrower each acknowledge and agree that (a) the Collection Account is subject to the sole dominion, control and discretion of Lender, (b) Lender has a fully perfected, first priority lien on and security interest in such accounts and the contents thereof, and (c) Borrower shall have no right of withdrawal with respect to any the Collection Account except with the prior written consent of Lender.  Collection Account Bank waives any right to offset any claim against Borrower which it might have against the Collection Account maintained hereunder.

7.    Matters Concerning Borrower.  Borrower acknowledges and agrees that Collection Account Bank is acting at the direction of, and as the agent of, Lender in connection with the subject matter of this Agreement.

8.    Lender Expenses.  Borrower shall pay to, or as directed by, Lender on demand, from time to time, all fees, costs and expenses of or incidental to the establishment (or re-establishment, as the case may be) of the Collection Account, the creation and perfection of Lender's Lien thereon, the custody, care, sale, transfer, administration, and realization thereof, and in any way relating to the enforcement or preservation of Lender's rights therein.  Such fees, costs, and expenses shall be paid as provided in Section 17 of that certain Cash Management Agreement between Borrower and Lender.

9.    Successors.  This Agreement shall bind and inure to the benefit of and be enforceable by the parties hereto.

10.    Assignment.  Collection Account Bank acknowledges and agrees that Lender may assign, sell, securitize, participate, pledge and\or otherwise transfer all or any portion of Lender's right, title and interest in, to and under any Loan Document in any Secondary Market Transaction in accordance with the Loan Agreement.

11.    Amendment.  This Agreement may not be amended except by an agreement in writing executed by all parties hereto.

12.    Notices.  All notices hereunder shall be given in writing and shall be effective for all purposes if hand delivered or sent by (a) hand delivery, with proof of attempted delivery, (b) certified or registered United States mail, postage prepaid, (c) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, or (d) by telecopier (with answerback acknowledged) provided that such telecopied notice must also be delivered by one of the means set forth in (a), (b) or (c) above, addressed to the parties as follows:

If to Collection Account Bank:          Rabobank, N.A.
                                        Treasury Service Division
                                        828 N. "H" Street
                                        Lompoc, California  93436

EXHIBIT A
page 7

|  | Attention: Julie Jones<br>Facsimile No.: (805) 736-7908 |
|---|---|
| If to Borrower: | Oxnard GSRS Holding, LLC<br>321 N. Mall Drive, Bldg. F-202<br>St. George, Utah 84790<br>Attention: David Dodart<br>Facsimile No.: 435-628-6034 |
| With a copy to: | Griffith & Thornburgh, LLP<br>8 E. Figueroa Street - 3rd Floor (93101)<br>Post Office Box 9<br>Santa Barbara, CA  93102-0009<br>Attention: Joseph M. Sholder, Esq.<br>Facsimile No.:  805-965-6751 |
| If to Lender: | Maiden Lane Commercial Mortgage-Backed<br>    Securities Trust 2008-1<br>c/o Federal Reserve Bank of New York<br>33 Liberty Street<br>New York, New York 10045-001<br>Attention: Helen Mucciolo, SVP<br>Facsimile No.: 212-720-1953 |
| With a copy to: | Federal Reserve Bank of New York<br>33 Liberty Street<br>New York, New York 10045-001<br>Attention: Stephanie Heller, Assistant General Counsel<br>and SVP<br>Facsimile No.: 212-720-1530 |
| With a copy to: | BlackRock Financial Management Inc.<br>55 E. 52nd Street<br>New York, New York 10055<br>Attention: Michael Mesard<br>Facsimile No.: 212-810-5117 |

A party receiving a notice which does not comply with the technical requirements for notice under this Section 12 may elect to waive any deficiencies and treat the notice as having been properly given. A notice shall be deemed to have been given: (a) in the case of hand delivery, at the time of delivery; (b) in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; (c) in the case of expedited prepaid delivery upon the first attempted delivery on a Business Day; or (d) in the case of telecopier, upon receipt of answerback confirmation, provided that such telecopied notice was also delivered as required in this Section 12.

    13.   Governing Law.   THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.   Notwithstanding the foregoing, for purposes of the UCC, the State where the Property is located shall be deemed to be the jurisdiction (within the meaning of Section 8-110 of the UCC and Section 9-304 of the UCC) of Collection Account Bank.

EXHIBIT A
page 8

14.    Certain Matters Affecting Collection Account Bank.

(a)    Collection Account Bank may rely and shall be protected in acting or refraining from acting upon any notice (including, without limitation, electronically confirmed facsimiles of such notice) believed by Collection Account Bank in good faith to be genuine and to have been signed or presented by the proper party or parties.

(b)    The duties and obligations of Collection Account Bank shall be determined solely by the express provisions of this Agreement and, as between Collection Account Bank and Borrower, the Account Agreement.

15.    Interpleader.  If at any time Collection Account Bank, in good faith, is in doubt as to the action it should take under this Agreement, Collection Account Bank shall have the right, at Borrower's expense, to commence an interpleader action in the United States District Court for the State of California and to take no further action except in accordance with joint instructions from Lender and Borrower or in accordance with the final order of the court in such action.

16.    Indemnification.  Collection Account Bank shall not be liable for any claims, suits, actions, costs, damages, liabilities or expenses or for any interruption of services, or incidental, consequential, special or punitive damages ("Liabilities") in connection with the subject matter of this Agreement other than Liabilities caused by or arising from, or related to (i) the fraud, gross negligence or willful misconduct of Collection Account Bank or any affiliate or any director, officer, employee or agent of any of them or (ii) a breach of this Agreement by Collection Account Bank.  Borrower hereby agrees to indemnify and hold harmless Collection Account Bank and its affiliates and the directors, officers, employees and agents of any of them, and the successors and assigns of Collection Account Bank from and against any and all Liabilities arising from or in connection with any acts or omissions taken by Collection Account Bank or any affiliate or any director, officer, employee or agent of any of them, as applicable, in connection with this Agreement, other than those Liabilities caused by or arising from, or related to (i) the fraud, gross negligence or willful misconduct of Collection Account Bank or such other indemnified person or (ii) a breach of this Agreement by Collection Account Bank.

17.    Counterparts.  This Agreement may be executed in any number of counterparts, each of which, taken together, shall constitute one and the same original.

[Signatures commence on the following page]

EXHIBIT A
page 9

IN WITNESS WHEREOF, the parties hereto have caused this Collection Account Agreement to be duly executed and delivered as of the date and year first above written.

**LENDER:**

U.S. BANK NATIONAL ASSOCIATION, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1

By:    Bank of America, N.A., as servicer for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1

By:_____
Name:         **Robert H. Cox**
Title:           **Director**


**BORROWER:**

OXNARD GSRS HOLDINGS, LLC, a California limited liability company

By:_____
Name:
Title:


**COLLECTION ACCOUNT BANK:**

RABOBANK, N.A.

By:_____
Name:
Title:

EXHIBIT A
page 10

Collection Account Agreement

IN WITNESS WHEREOF, the parties hereto have caused this Collection Account Agreement to be duly executed and delivered as of the date and year first above written.

**LENDER:**

U.S. BANK NATIONAL ASSOCIATION, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1

By:    Bank of America, N.A., as servicer for the
       Maiden Lane Commercial Mortgage-Backed
       Securities Trust 2008-1

       By: _____
       Name: _____
       Title: _____

**BORROWER:**

OXNARD GSRS HOLDINGS, LLC, a California limited liability company

By: Oxnard GSRS, LLC, its managing member

By: _____
Name: David Dodart
Title: Managing member

**COLLECTION ACCOUNT BANK:**

RABOBANK, N.A.

By: _____
Name:
Title:

Collection Account Agreement

EXHIBIT A
page 11

IN WITNESS WHEREOF, the parties hereto have caused this Collection Account Agreement to be duly executed and delivered as of the date and year first above written.

**LENDER:**

U.S. BANK NATIONAL ASSOCIATION, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1

By:     Bank of America, N.A., as servicer for the
        Maiden Lane Commercial Mortgage-Backed
        Securities Trust 2008-1

        By:_____
        Name:_____
        Title:_____

**BORROWER:**

OXNARD GSRS HOLDINGS, LLC, a California limited liability company

By:  Oxnard GSRS, LLC, its managing member

     By:_____
     Name:  David Dodart
     Title:  Managing member

**COLLECTION ACCOUNT BANK:**

RABOBANK, N.A.

     By:_____
     Name:  GARY /M. ROBLES
     Title:  SVP

la-1066555                                        Collection Account Agreement

EXHIBIT A

The Account Agreement

(see attached)



*Rabobank*

# Nationwide Wholesale Lockbox Service Agreement Letter

Rabobank, N.A.
3800 Concours Street
Suite 350
Ontario, California 91674

Commencing on or about June 10, 2010, Oxnard GSRS Holdings, LLC ("Client") has requested that Rabobank, N.A. ("Bank"), provide the Client with Rabobank's Nationwide Wholesale Lockbox Service ("Service"). The Client agrees that the Bank provision and the Client's receipt of the Service shall be upon the following terms and conditions.

1.    The Service

    1.1  General Description

        (a)    The Client hereby agrees to enter into a Lockbox Service Agreement, as referred in Section 6.1, with its lockbox customers ("Customers") under which the Client shall agree to direct their Customers to send their remittances to a location to be used by the Customers in remitting their payments to the Client. The Client hereby authorizes and directs the Bank to arrange for unique zip codes on behalf of the Client.

        (b)    The Client hereby authorizes the Bank to collect the mail addressed to the zip codes established pursuant to section 1.1(a).

        (c)    The Client  hereby authorizes the Bank  to arrange for the physical transportation of checks from the U. S. Post Office to a  processing center, ; and also authorizes the Bank  to transport such checks from such payment processing centers to the appropriate check clearing location  or a local clearing bank.

        (d)    Bank and the Client shall execute a Wholesale Lockbox Setup Form. The Setup Form shall be part of this Agreement and can be amended from time to time by mutual agreement of the parties, such amendment also becoming part of this Agreement; provided, however, that any amendment to a Client  Setup Form is subject to Bank's advance written approval.

        (e) The Bank shall open mail and process remittances according to the instructions set forth in the Setup Form.

        (f)    The Bank shall, in providing the Service and in accordance with its then current procedures, maintain records of all checks processed by Rabobank's Wholesale Lockbox processing center.

EXHIBIT A
page 14

(h)     In the event of a Client's request to the Bank by the drawee bank with a request for the endorsement of the Client, the Bank is hereby authorized to endorse such check as follows:

> CREDIT TO THE ACCOUNT OF
> THE WITHIN NAMED PAYEE
> PAYMENT ACCEPTED WITHOUT PREJUDICE
> ABSENCE OF ENDORSEMENT GUARANTEED
> Rabobank, N.A.

or, the local clearing bank is authorized to endorse such check in accordance with their then current practices.

(i)     The Bank shall credit to the Bank's account 5889538181 (the "Bank's Account"), the total of all checks processed for all Clients each day. The parties agree that the credit and collection of such checks shall be subject to the same terms and conditions as would apply to deposits received by directly from the Clients, subject to Section 1.3 hereof.

(j)     The Bank shall provide same day notification of all return items and adjustments that will be posted to the Bank's Account that day via telephone call and/or the Bank's balance reporting and transaction initiation system.

(k)     The Bank shall send, by means selected by Client, the following materials to the Client in accordance with a schedule to which the parties shall mutually agree:

(i) Processed documents.
(ii) Unprocessed items.
(iii) Credit advices.
(iv) Photocopies of checks.

(l)     The Client authorizes Bank to debit and transfer ledger balance funds in the Client's Lockbox Account, for subsequent credit to Client's Account at the Bank.

1.2    Automated Services

The following shall apply when the Service is provided with the use of Automated Wholesale Lockboxes/Retail Lockbox.

(a)     The Bank shall, on each banking day, capture data according to the instructions set forth in the Setup Form. The Bank shall record the captured data in a format mutually agreed to by the Bank and the Client.

(c) In the event a transmission cannot be received or the Bank is unable to make a transmission, all processed remittance data shall be held at the Bank until the problem has been rectified or until the parties have agreed upon another arrangement.

2. Fees: Payment

2.1 The Client shall pay Bank for the Service in accordance with the attached Schedule of Fees. Bank may amend all fees upon thirty (30) days written notice to the Client. Optional reports or any additional services requested by the Client shall bear additional fees.

2.2 The Client will pay the Bank for the Service in accordance with the Bank's current fees for the Service as are then in effect. The Client agrees to pay all invoices submitted by Bank within thirty (30) days of the billing date set forth in the invoice. If payment is not received within 60 days of the invoice date, Bank reserves the right to directly debit the Clients account or accounts in the amount of the fees owed to Bank.

2.3 If the Client has agreed to pay for services with compensating balances, then the current fees for the Service will be applied to those balances. Under this arrangement the Client agrees to adjust balance requirements as necessary to completely cover the Service; otherwise Bank will affect payment for any deficit as outlined in 2.2.

3. Liability: Limitation of Damages

3.1 Unless the Bank engages in willful misconduct or is grossly negligent, the Client hereby (a) waives and releases the Bank from any and all claims or causes of action the Client might otherwise have against the Bank and (b) agrees to relieve the Bank from any and all liability, in connection with the Bank's performance of the Service under this Agreement and to indemnify the Bank and hold the Bank harmless from and against any and all claims, actions, liabilities, losses, damages, costs or expenses including reasonable attorney's fees, incurred by the Bank as a result of any claim, demand, lawsuit or judgment arising from or in connection with (i) any action or omission by the Client or those of any other person/ including Federal Reserve Bank, transmission or communications facility, any receiver or receiving depository financial institution or any bank Client uses and no such person shall be considered our agent, with respect to this Agreement and (ii) any action or omission by the Bank in its performance of the Service under this Agreement.

4. Confidentiality

(a). The design of the Bank's lockbox system, the technologies and methodologies

(b). The Bank will use its best efforts to protect the integrity and confidentiality of all customer data, information, and documents related to the Client  and the Client's  customers of which the Bank  becomes aware as a result of the Bank providing the Service to the Client . The Bank  will not reveal or communicate to any third  party not involved in the provision of Service any information concerning such data, customer information and documents unless so required under applicable law regulatory or government authority, legal process, or as directed by Client.

5.    Force Majeure

Notwithstanding any other provision of this Agreement, the Bank shall not be liable for any failure, inability to perform, or delay in performance hereunder, if such failure, inability, or delay is due to act of God, war, civil disorder, governmental action, fire, explosion, strikes, other industrial disturbances, equipment malfunction, action, non-action or delayed action on the part of any entity other than the Bank, unusually severe weather conditions or other events or circumstances beyond the Bank's reasonable control.

6.    Termination

Either party may terminate this Agreement at any time:  (a) immediately for cause: or (b) without cause upon prior written notice to the other party of at least ninety (90) days.
Notwithstanding such termination, this Agreement shall remain in full force and effect with respect to all transactions hereunder that occur prior to the date of such termination.  For the purposes of this Section 6, "cause"' shall include, but not be limited to, a determination by Rabobank, N.A. at any time that the Client's credit worthiness has been sufficiently impaired such that Rabobank, N.A. no longer wishes to continue providing the Service under this Agreement.

7.    Notices

All notices permitted or required by this Agreement shall be deemed to have been duly given if sent by personal delivery, mail, telegram, facsimile, or electronic mail.  All notices will be acted up within five (5) business of receipt.

Contact your Treasury Services Relationship Manager for instructions when sending notices.

8.    Miscellaneous

    8.1    This Agreement shall be governed by the laws of the State of California.

    8.2    The section headings in this Agreement are intended to be for reference purposes only and shall in no way modify or restrict any of the terms and provisions hereof.

    8.3    To the extent possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be held to be invalid, illegal or unenforceable, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability the remainder of such provision or the remaining provisions of this Agreement shall remain valid.

    8.4    This Agreement contains the entire agreement of the parties relating to the subject matter hereof and supersedes any prior agreements or representations relating to such subject matter. Except as stated herein, no amendment or waiver of any provision of this Agreement shall be effective unless evidenced in writing and signed by both parties.

IN WITNESS WHEREOF, Rabobank, N.A. and the Client, intending to be legally bound, have caused this Agreement to be executed by a duly authorized officer as of the day and year first above written.

Client

|  |  | Dated: | February 24, 2010 |
|---|---|---|---|
| Company: | Oxnard GSRS Holdings, LLC | By |  |
| Address: | P.O. Box 40233 |  |  |
| City: | Santa Barbara | Name: | David Dodart |
| State, Zip: | California, 93140 | Title: | Manager |

Rabobank, N.A.

|  |  | Dated: | , 20__ |
|---|---|---|---|
| Company: | Rabobank, N.A. | By |  |

EXHIBIT A
page 19

EXHIBIT B

<u>Loan Account</u>

Bank:                    Bank of America
ABA No. :                026009593
Account Name:            Bank of America Incoming Wires
Account Number:          4782779943
Reference:               Loan No.3282662

EXHIBIT A
page 20

## CASH MANAGEMENT AGREEMENT

THIS CASH MANAGEMENT AGREEMENT (this "Agreement"), dated as of May __, 2010, is made by and among OXNARD GSRS HOLDINGS, LLC, a California limited liability company ("Borrower"), ETC MANAGEMENT CO., a Minnesota corporation ("Agent"), and U.S. BANK NATIONAL ASSOCIATION, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1 (together with its successors and assigns, "Lender").

### RECITALS

A.      Pursuant to that certain Promissory Note executed by Borrower in favor of Bear Stearns Commercial Mortgage Inc. (the "Prior Lender") dated as of June 5, 2007 (the "Note"), Borrower became indebted to Prior Lender in the original principal amount of $8,750,000 (the "Loan"). The Loan is secured by, among other things, that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of June 5, 2007, executed by Borrower for the benefit of Mortgage Electronic Registration Systems, Inc., as record beneficiary on behalf of Prior Lender as the true beneficiary, and recorded in the Official Records of Ventura County, California (the "Official Records"), on June 6, 2007, as Document No. 2007060-00114330-0 (the "Security Instrument"). Capitalized terms not defined herein shall have the meanings set forth in the Note or Security Agreement, as applicable.

B.      Pursuant to that certain Motel Management Agreement dated as of August 6, 2006, by and between Borrower and Agent (the "Management Agreement"), Agent has agreed to operate and manage the Property.

C.      Borrower, Agent, and Lender are parties to that certain Conditional Assignment of Management Agreement dated as of June 5, 2007 (the "Assignment Agreement"), pursuant to which (among other things) (1) Borrower assigned to Lender its right, title, and interest in and to the Management Agreement as security for the Loan, and (2) Agent subordinated its right under the Management Agreement to Lender's rights with respect to the Loan and the Property.

D.      Borrower, Lender, and Rabobank, N.A. ("Collection Account Bank") are parties to that certain Collection Account dated concurrently herewith (the "Collection Account Agreement"), pursuant to which Borrower has established a deposit account (the "Collection Account") into which all revenues from the Property will be deposited.

E.      Pursuant to its rights under the Assignment Agreement and the other Loan Documents, Lender has required Borrower and Agent to establish the Collection Account and to enter into this Agreement relating to the management of cash flow from the Property.

F.      Certain Events of Default currently exist with respect to the Loan (the "Existing Events of Default"). Borrower and Lender are currently in discussions concerning the manner in which such Existing Events of Default may be remedied ("Discussions"), and such Discussions may result in the execution of one or more definitive documents pertaining thereto (if and when executed by Borrower and Lender, the "Definitive Documents"). No party has any obligation to enter into any such Definitive Documents, and all Discussions relating thereto are subject to the terms and conditions of that certain letter agreement among Lender, Borrower and Guarantor dated as of January 20, 2009. However, Borrower and Lender have agreed to enter in this Agreement regardless of the outcome of any such Discussions.

NOW, THEREFORE, in consideration of the covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto

la-1018476

agree as follows:

1.      Establishment of Accounts.  On the date hereof, (a) Borrower shall establish the Collection Account pursuant to the Collection Account Agreement, into which all Rents will be deposited, and Collection Account Bank will agree to, among other things, transfer such funds to the Loan Account (as defined in the Collection Account Agreement) on a daily basis (including, without limitation, on the date hereof), (b) Borrower shall provide Lender an accounting of Rents then on deposit as of the effective date of this Agreement.

2.      Deposits into Collection Account.  Borrower and Agent represent, warrant and covenant that:

(a)      Borrower and Agent shall cause all Rents to be deposited directly into the Collection Account.  Without limiting the foregoing, Borrower shall cause each (i) credit card company with which Borrower or Agent has entered into a merchant agreement, and (ii) wholesaler or other third-party with which Borrower or Agent has entered into any agreement for payments relating to bookings of rooms at the Property, to send all transfer of funds for credit card payments and other payments received by Borrower or Agent directly to the Collection Account pursuant to an instruction letter in the form of Exhibit A attached hereto (a "Payment Direction Letter").  Commencing with the first billing statement delivered after the date hereof and for each subsequent statement delivered, Borrower and Agent shall instruct all Persons that maintain open accounts with Borrower or Agent or with whom Borrower or Agent does business on an "accounts receivable" basis with respect to the Property to deliver all payments due under such accounts to the Collection Account.  Neither Borrower nor Agent shall direct any such Person to make payments due under such accounts in any other manner.

(b)      If, notwithstanding the provisions of Section 2(a), Borrower or Agent receives any Rents, then (i) such amounts shall be deemed to be Collateral (as defined below) and shall be held in trust for the benefit, and as the property, of Lender, (ii) such amounts shall not be commingled with any other funds or property of Borrower or Agent, and (iii) Borrower and Agent shall deposit such amounts in the Collection Account within one (1) Business Day of receipt.

(c)      Without the prior written consent of Lender, neither Borrower nor Agent shall (i) terminate, amend, revoke or modify any Payment Direction Letter, or (ii) direct or cause any credit card company to pay any amount in any manner other than as provided in the related Payment Direction Letter.

(d)      There are no other accounts maintained by Borrower, Agent or any other Person into which Rents from the Property are deposited. So long as the Loan shall be outstanding, none of Borrower, Agent or any other Person shall open any other such account for the deposit of Rents from the Property.

3.      Application of Rents.  Pursuant to the Collection Account Agreement, all amounts on deposit in the Collection Account (after payment of any fees due Collection Account Bank pursuant to the Collection Account Agreement) shall be delivered to the Loan Account on a daily basis.  Lender agrees to apply funds received in the Loan Account on each Monthly Payment Date as follows:

(a)      First, an amount to Lender sufficient to pay all amounts then due and payable with respect to any tax or insurance reserve or escrow required under the Loan Documents until all such amounts have been fully paid (provided, however, to the extent the premium for insurance is paid monthly and such amount is included in the Current Budget (as defined below), such amount shall not be escrowed pursuant to this clause (a) but instead shall be paid pursuant to clause (b) below);

la-1018476

EXHIBIT B
page 22

(b)    Second, Lender shall disburse Agent the amount necessary to pay all monthly Operating Expenses of the Property for the month in which such disbursement is made (the "Subject Month"), in an amount (except as provided in this clause (b) below) set forth in the budget for the Property attached hereto as Exhibit B (as the same may be amended from time to time by the mutual agreement of Borrower and Lender or by order of the court in connection with the Bankruptcy Action defined below, the "Current Budget") (it being agreed that in the event of any conflict between any budget required by the terms and conditions of the Loan Documents and the Current Budget, the Current Budget shall control), so long as prior to any such disbursement of funds pursuant to this clause (b) Borrower or Agent delivers to Lender such evidence as Lender may request to demonstrate that funds previously disbursed to Agent with respect to Operating Expenses incurred for the second (2nd) calendar month prior to the Subject Month have been used to pay the Operating Expenses actually incurred for such earlier month(s) (such evidence, a "Reconciliation") (i.e., a Reconciliation with respect to amounts disbursed in May 2010 will be required as a condition of any disbursement in July 2010); provided, however, in the event that any such Reconciliation demonstrates (or Lender otherwise discovers) that funds disbursed pursuant to this clause (b) exceeded the actual Operating Expenses for the Subject Month in which it was made, the amount by which such prior disbursement exceeded such actual Operating Expenses shall be deducted from the disbursement to be made for the month when such Reconciliation was delivered (or such month where Lender otherwise discovers it funded such excess amounts), and any subsequent months to the extent so required;

(c)    Third, Lender shall disburse such amount to Agent that Agent shall have requested in writing at least five (5) Business Days prior to the applicable Monthly Payment Date (which request shall include applicable invoices or paid receipts for amounts being requested by Agent) for purposes of paying Operating Expenses incurred with respect to the Property for the Subject Month that exceeded the amounts distributable to Agent pursuant to clause (b) above (such expenses, "Extraordinary Expenses") so long as such Extraordinary Expenses (i) were not within the reasonable control of Agent or Borrower, or (ii) were previously approved in writing by Lender; provided, however, with each request for a disbursement, Lender shall have received evidence that amounts disbursed pursuant to this clause (c) with respect to the prior month based on invoices of amounts then due and payable have actually been used to pay such invoices;

(d)    Fourth, to Lender, an amount sufficient to pay all of Lender's costs and expenses incurred in connection with the Loan that have not been reimbursed by Borrower as of such date, up to $10,000.00 per Monthly Payment Date (provided such limitation shall not limit the Borrower's obligation to reimburse Lender for all of its costs and expenses as provided in the Loan Documents, but rather represents the amount of Property revenues that will be used to pay such expenses prior to being accumulated in the Loan Account up to the amount set forth below).

Any funds in excess of $20,000.00 remaining in the Loan Account after application pursuant to this Section 3 may, at Lender's election, be applied to amounts then due and payable with respect to the Loan (including, without limitation, Lender's unreimbursed costs and expenses) is such order and priority as Lender determines in its sole and absolute discretion.

Notwithstanding the preceding provisions, Lender shall have the right to apply funds held by Lender to payment of any and all debts, liabilities and obligations of Borrower to Lender pursuant to the Loan Documents in such order, proportion and priority as Lender may determine in its sole discretion upon the earlier to occur of (i) any failure by Borrower to perform any of its obligations under any Definitive Document, (ii) any failure by Borrower to perform any of its obligations under this Agreement or the Collection Account Agreement (including, without limitation, any failure by Borrower to apply funds disbursed to Borrower pursuant to this Section 3 to pay the expenses for which such disbursement was made), (iii) any violation by Borrower of any order issued by the U.S. Bankruptcy Court in which

la-1018476

EXHIBIT B
page 23

Borrower's bankruptcy is now pending (the "Bankruptcy Action"), and (iv) Lender having obtained relief from the automatic stay imposed by the U. S. Bankruptcy Code in connection with the Bankruptcy Action, or such Bankruptcy Action having been dismissed (the events described in the foregoing clauses (i) and (iv) are hereafter referred to as "Failure Events").

4.      Rights to Accounts.  Neither Borrower nor Agent shall have any right to withdraw funds from or otherwise direct the application of funds in the Collection Account or the Loan Account.  Any amounts held by or on behalf of Lender pursuant to this Agreement that are not applied to the payment of amounts then due with respect to the Loan shall be held by or on behalf of Lender as additional collateral for the Loan and may be commingled with other funds held by or on behalf of Lender, and Lender shall have no obligation to pay Borrower or Agent any interest or other earnings thereon.  Borrower acknowledges and agrees that the Loan Account may be held by Lender's servicer.

5.      Shortfalls.  Nothing in this Agreement shall limit, reduce, or otherwise affect Borrower's obligations to make the payments of principal, interest and other amounts required to be paid to Lender pursuant to the Loan Documents.  Nothing in this Agreement is intended to waive, alter, or diminish any rights of Lender under the Loan Documents.  Notwithstanding the foregoing, the failure of the Property to generate sufficient revenues to pay principal and interest due under the Note, or to pay any fees or costs due Lender hereunder or under the Collection Account Agreement, shall not be a Failure Event under this Agreement.

6.      Reserved.

7.      Security for Obligations.  To secure the payment and performance of all obligations of Borrower under the Loan Documents (all such obligations, collectively, the "Obligations"), Borrower hereby grants to Lender a first priority continuing security interest in and to the following property of Borrower, whether now owned or existing or hereafter acquired or arising and regardless of where located (collectively, the "Collateral"): (i) the Collection Account, the Loan Account, and all cash, checks, drafts, certificates and instruments, if any, from time to time deposited or held in the Collection Account or Loan Account including, without limitation, all deposits or wire transfers made to the Collection Account and Loan Account; (ii) all interest, dividends, cash, instruments, investment property and other property from time to time received, receivable or otherwise payable in respect of, or in exchange for, any or all of the foregoing; and (iii) to the extent not covered by clauses (i) or (ii) above, all "proceeds" and "products" (as defined under the UCC) of any or all of the foregoing.  Lender shall have with respect to the Collateral, in addition to the rights and remedies hereunder, all of the rights and remedies available at law or in equity, including, without limitation, all rights and remedies available to a secured party under the UCC, as if all such rights and remedies were fully set forth herein.

8.      Sole Dominion and Control.  Borrower and Agent acknowledge and agree that the Collection Account and Loan Account are subject to the sole dominion, control and discretion of Lender (subject only to the terms and conditions of this Agreement), its authorized agents or designees, subject to the terms hereof.  Other than disbursements to Agent authorized hereunder, neither Borrower nor Agent shall have the right of withdrawal with respect to the Collection Account or Loan Account.

9.      Financing Statement; Further Assurances.  Lender is hereby authorized to file any financing statement or continuation statement, to the extent permitted by law, in connection with the Collateral in the form required by Lender to properly perfect Lender's security interest therein.  Borrower agrees that at any time and from time to time, at the expense of Borrower, Borrower will promptly execute and/or deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Lender may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Lender to exercise and enforce its rights

EXHIBIT B
page 24

and remedies hereunder with respect to any Collateral.

10.     Termination of Agreement.  This Agreement shall create a continuing security interest in the Collateral and shall remain in full force and effect until payment in full of the Obligations.

11.     Lender Appointed Attorney-In-Fact.  Borrower hereby irrevocably constitutes and appoints Lender as Borrower's true and lawful attorney-in-fact, with full power of substitution, to execute, acknowledge and deliver any instruments and to exercise and enforce every right, power, remedy, option and privilege of Borrower with respect to the Collateral, and do in the name, place and stead of Borrower, all such acts, things and deeds for and on behalf of and in the name of Borrower, which Borrower could or might do or which Lender may deem necessary or desirable to more fully vest in Lender the rights and remedies provided for herein and to accomplish the purposes of this Agreement. The foregoing powers of attorney are irrevocable and coupled with an interest.  If Borrower fails to perform any agreement herein contained, Lender may perform or cause performance of any such agreement, and any reasonable expenses of Lender in connection therewith shall be paid by Borrower.

12.     Remedies.  Upon the occurrence of a Failure Events, any amounts deposited into or remaining in the Collection Account or Loan Account shall be for the account of Lender and may be withdrawn by Lender to be applied in any manner as Lender may elect in Lender's discretion, including, that Lender may: (a) without notice to Borrower, except as required by law, and at any time or from time to time, charge, set-off and otherwise apply all or any part of the Collateral against the Obligations or any part thereof; (b) in its sole discretion, at any time and from time to time, exercise any and all rights and remedies available to it under this Agreement, and/or as a secured party under the UCC; and (c) demand, collect, take possession of, receive, settle, compromise, adjust, sue for, foreclose or realize upon the Collateral (or any portion thereof) as Lender may determine in its sole discretion.

13.     Waiver.  Borrower hereby expressly waives, to the fullest extent permitted by law, presentment, demand, protest or any notice of any kind in connection with this Agreement or the Collateral.  Borrower acknowledges and agrees that ten (10) days' prior written notice of the time and place of any public sale of the Collateral or any other intended disposition thereof shall be reasonable and sufficient notice to Borrower within the meaning of the UCC.

14.     Entire Agreement.  This Agreement and the other Loan Documents constitute the entire and final agreement between the parties with respect to the subject matter hereof and may not be changed, terminated or otherwise varied, except by a writing duly executed by the parties.

15.     Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective successors and permitted assigns.

16.     Notices.  All notices hereunder shall be given in writing and shall be effective for all purposes if hand delivered or sent by (a) hand delivery, with proof of attempted delivery, (b) certified or registered United States mail, postage prepaid, (c) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, or (d) by telecopier (with answerback acknowledged) provided that such telecopied notice must also be delivered by one of the means set forth in (a), (b) or (c) above, addressed to the parties as follows:

If to Borrower:                  Oxnard GSRS Holding, LLC
                                 321 N. Mall Drive, Bldg. F-202
                                 St. George, Utah 84790
                                 Attention:  David Dodart
                                 Facsimile No.: 435-628-6034

EXHIBIT B
page 25

| | |
|---|---|
| With a copy to: | Griffith & Thornburgh, LLP<br>8 E. Figueroa Street - 3rd Floor (93101)<br>Post Office Box 9<br>Santa Barbara, CA  93102-0009<br>Attention:  Joseph M. Sholder, Esq.<br>Facsimile No.:  805-965-6751 |
| If to Agent: | ETC Management Co.<br>24707 County Road 75<br>St. Augusta, Minnesota 56301 |
| If to Lender: | Maiden Lane Commercial Mortgage-Backed<br>  Securities Trust 2008-1<br>c/o Federal Reserve Bank of New York<br>33 Liberty Street<br>New York, New York 10045-001<br>Attention:  Helen Mucciolo, SVP<br>Facsimile No.:  212-720-1953 |
| With a copy to: | Federal Reserve Bank of New York<br>33 Liberty Street<br>New York, New York 10045-001<br>Attention:  Stephanie Heller, Assistant General Counsel<br>and SVP<br>Facsimile No.:  212-720-1530 |
| With a copy to: | BlackRock Financial Management Inc.<br>55 E. 52nd Street<br>New York, New York 10055<br>Attention:  Michael Mesard<br>Facsimile No.:  212-810-5117 |

A party receiving a notice which does not comply with the technical requirements for notice under this Section 16 may elect to waive any deficiencies and treat the notice as having been properly given.  A notice shall be deemed to have been given: (a) in the case of hand delivery, at the time of delivery; (b) in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; (c) in the case of expedited prepaid delivery upon the first attempted delivery on a Business Day; or (d) in the case of telecopier, upon receipt of answerback confirmation, provided that such telecopied notice was also delivered as required in this Section 16.

     17.   Expenses.  Borrower shall pay to, or as directed by, Lender on demand, from time to time, all fees, costs and expenses of or incidental to the establishment (or re-establishment, as the case may be) and on-going maintenance of the Loan Account, the creation and perfection of Lender's Lien thereon and on the Collection Account, the custody, care, sale, transfer, administration, and realization thereof, and in any way relating to the enforcement or preservation of Lender's rights therein.  Lender shall have the right to charge the Loan Account for the payment of such fees, costs, and expenses, and the fees, costs, and expenses due pursuant to Section 8 of the Collection Account Agreement, as the same become due after application of funds in the Loan Account as provided in Sections 3(a) through 3(d) hereof.

EXHIBIT B

18.   No Waiver.  The rights and remedies provided in this Agreement and the other Loan Documents are cumulative and may be exercised independently or concurrently, and are not exclusive of any other right or remedy provided at law or in equity.  No failure to exercise or delay by Lender in exercising any right or remedy hereunder or under the Loan Documents shall impair or prohibit the exercise of any such rights or remedies in the future or be deemed to constitute a waiver or limitation of any such right or remedy or acquiescence therein.  No delay or extension of time by Lender in exercising any power of sale, option or other right or remedy hereunder, and no notice or demand which may be given to or made upon Borrower by Lender, shall constitute a waiver thereof, or limit, impair or prejudice Lender's right, without notice or demand, to take any action against Borrower or to exercise any other power of sale, option or any other right or remedy.

19.   Governing Law.  This Agreement and the Collection Account shall be governed by and construed and enforced in all respects in accordance with the laws of the State where the Property is located, without regard to conflicts of law principles of such State.  Regardless of any provision in any other agreement, for purposes of the UCC, the State where the Property is located shall be deemed to be the jurisdiction (within the meaning of Section 8-110 of the UCC and Section 9-304 of the UCC) of any "bank" at which the Collection Account is maintained.

20.   Counterparts.  This Agreement may be executed in any number of counterparts each of which, taken together, shall constitute one and the same original.

21.   Location of Defined Terms.

| Defined Term | Location |
|---|---|
| "Agent" | First Paragraph |
| "Agreement" | First Paragraph |
| "Assignment Agreement" | Recital C |
| "Bankruptcy Action" | Section 3 |
| "Borrower" | First Paragraph |
| "Collateral" | Section 7 |
| "Collection Account" | Recital D |
| "Collection Account Agreement" | Recital D |
| "Collection Account Bank" | Recital D |
| "Current Budget" | Section 3(b) |
| "Definitive Documents" | Recital F |
| "Discussions" | Recital F |
| "Existing Events of Default" | Recital F |
| "Extraordinary Expenses" | Section 3(c) |
| "Failure Events" | Section 3 |
| "Lender" | First Paragraph |
| "Loan" | Recital A |
| "Loan Account" | Collection Account Agreement |
| "Management Agreement" | Recital B |
| "Note" | Recital A |
| "Obligations" | Section 7 |
| "Official Records" | Recital A |
| "Payment Direction Letter" | Section 2(a) |
| "Prior Lender" | Recital A |
| "Reconciliation" | Section 3(b) |
| "Security Instrument" | Recital A |

EXHIBIT B
page 27

"Subject Month".............................................................................................................Section 3(b)

[Signatures commence on the following page]

EXHIBIT B
page 28

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and year first above written.

**BORROWER:**

OXNARD GSRS HOLDINGS, LLC, a California limited liability company

By:      Oxnard GSRS, LLC, its managing member,

By: _____

Name: David Dodart
Title: Oxnard GSRS, LLC, managing member


**AGENT:**

ETC MANAGEMENT CO., a Minnesota corporation

By: _____
        Name:
        Title:


**LENDER:**

U.S. BANK NATIONAL ASSOCIATION, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1

By:      Bank of America, N.A., as servicer for the Maiden Lane
        Commercial Mortgage-Backed Securities Trust 2008-1


        By: _____
        Name: _____
        Title: _____

la-1018476

EXHIBIT B
page 29

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and year first above written.

**BORROWER:**

OXNARD GSRS HOLDINGS, LLC, a California limited liability company

By: _____
    Name:
    Title:


**AGENT:**

ETC MANAGEMENT CO., a Minnesota corporation

By: _____
    Name:
    Title:


**LENDER:**

U.S. BANK NATIONAL ASSOCIATION, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1

By:    Bank of America, N.A., as servicer for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1

By: _____
Name:_____ Robert H. Cox
Title:_____ Director

## EXHIBIT A

Form of Payment Direction Letter

[BORROWER LETTERHEAD]

_____, 200__

[Insert name and address of Credit Card Company, Wholesaler, Etc.]

     Re:    Payment Direction Letter for [insert name of Credit Card Company, Wholesaler, Etc.]
            pertaining to [_____]

Ladies and Gentlemen:

Pursuant to that certain [Merchant/Wholesale, Etc. Agreement] (the "Agreement") between [_____] (the "Borrower") and [insert name of counterparty] ("Company"), a copy of which is attached hereto as Exhibit 1, Company has agreed to [accept [insert name of credit card] charges][accept payments for reservations, etc.] (collectively, "Charges") and to transfer certain funds to Borrower in consideration for such Charges, as provided in the Agreement.

U.S. BANK NATIONAL ASSOCIATION, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1 ("Lender") has entered into a financing transaction with the Borrower, pursuant to which Lender has made a loan to Borrower. As security for the obligations of Borrower under such financing transaction, Borrower has, among other things, granted to Lender a first lien and security interest in its realty, inventory, accounts and its tangible and intangible personal property, including, without limitation, all rights of Borrower to receive payments in respect of Charges. As a condition to providing such financing to Borrower, Lender has required Borrower to obtain Company's agreement to the provisions of this letter agreement.

Accordingly, Company hereby agrees with Borrower and Lender as follows:

(e)    With respect to the hotel facility listed on Exhibit 2 hereto, Company is instructed to, and shall, make all payments due to Borrower under the Agreement on and after the date hereof, in the manner and at the times set forth in the Agreement, directly to the account listed on Exhibit 3, or such other account as may be specified from time to time as provided herein (each such account, a "Collection Account" and, collectively, the "Collection Accounts"). All payments under the Agreement shall be made to the applicable Collection Account and to no other account unless and until Company receives written notification from Lender (and Borrower authorizes Company to comply with any such instruction received from Lender). Without the prior written consent of Lender, Borrower agrees that it shall not terminate, amend, revoke or modify this Payment Direction Letter in any manner or direct or cause Company to pay any amount in any manner other than as provided specifically herein. Notwithstanding anything to the contrary contained herein, Company shall not be responsible for enforcement of Borrower's agreement not to terminate, amend, revoke or modify this Payment Direction Letter or direct or cause Company to pay any amount other than as provided specifically herein.

(f)    This letter agreement confers on Lender no greater rights to payment under the Agreement than Borrower has thereunder.

EXHIBIT B
B-1
page 31

(g)     The provisions of this letter agreement cannot be modified or rescinded without Lender's prior written consent. The signatures of Borrower and Company set forth below indicates their agreement with the terms hereof.

(h)     If the foregoing is acceptable to Company, please acknowledge Company's agreement and acceptance of this letter agreement by duly signing and promptly returning a copy of this letter agreement, it being agreed that this letter agreement may be executed in counterparts.

Sincerely,

OXNARD GSRS HOLDINGS, LLC, a California limited liability company

By:     _____
        Name:
        Title:


ACCEPTED AND AGREED:

[Insert name of Company]

By:_____
Name:
Its:
Date:

EXHIBIT 1

[Attach copy of Agreement]

EXHIBIT 2

[Identify Hotel Facility]

GrandStay Residential Suites Hotel, 2211 East Gonzales Rd., Oxnard, California 93036

EXHIBIT 3

Wiring Instructions for Collection Account

Bank:   Bank of America

City / State:  New York, New York

ABA No.:  026009593

Account No.:  1235186835

Account Name:  OXNARD GSRS HOLDINGS, LLC as Borrower ftbo Bank of America, N.A. as Master
Servicer for US Bank, N.A., as Trustee for the Registered Holders of Maiden Lane Commercial Mortgage-
Backed Securities Trust 2008-1

EXHIBIT B
page 35

Debtor(s).    CHAPTER: 11

CASE NUMBER: ND 09-12665-RR

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
8 E. Figueroa Street, Third Floor, Santa Barbara, CA 93101

A true and correct copy of the foregoing document described as **STIPULATION RE THE CONTINUED USE OF CASH COLLATERAL PURSUANT TO 11 USC 363 (c), FED.R.BANKR.P. 4001(b) AND LOCAL RULES 2081-1 AND 4001-2**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ **JUNE 2, 2010** _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov  (on behalf of U.S. Trustee)
- Adam A Lewis    alewis@mofo.com (attorney for creditor U.S. Nat. Bank Assoc.)
- Franklyn S Michaelson    kim@msmlaw.com (Interest Party by courtesy NEF)
- Vincent J Novak    vnovak@mofo.com (attorney for creditor U.S. Nat. Bank Assoc.)
- Joseph M. Sholder    sholder@g-tlaw.com (attorney for Debtor)
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _____ **JUNE 2, 2010** _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ **JUNE 2, 2010** _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**By Personal Delivery: Hon. Robin Riblet, United States Bankruptcy Court, 1415 State Street, Santa Barbara, CA 93101**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| JUNE 2 2010 | Evelyn R. Downs | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
January 2009

**F 9013-3.1**
American LegalNet, Inc.
www.FormsWorkflow.com

In re:
Oxnard GSRS Holdings, LLC

CHAPTER: 11

Debtor(s).

CASE NUMBER: ND -09-12665-RR

## ADDITIONAL SERVICE INFORMATION (if needed):

20 LARGEST UNSECURED CREDITORS- By Regular Mail:

Time Warner Cable
PO Box 60074
City of Industry, CA 91716-0074

Starbucks Coffee Company
PO Box 84348
Seattle, WA 98124-5648

FirstComp
PO Box 30020
Omaha, NE 68103-1120

Guest Supply
PO Box 910
Monmouth Junction, NJ 08852-0910

Waffles of California, Inc.
PO Box 1448
Brea, CA 92822-1448

Jordanos Food Services
550 South Patterson Avenue
Santa Barbara, CA 93111

ETC Enterprises Inc
24707 County Road 75
St. Augusta, MN 56301

GrandStay Hospitality LLC
24707 County Road 75
St. Augusta, MN 56301

Commtrak
17493 Nassau Commons
Lewes, DE 19958

MWH Services Inc
4170 Thielman Lane
St Cloud, MN 56302-0159

ThyssenKrupp Elevator
PO Box 933013
Atlanta, GA 31193-3013

SeaBreeze Landscape Care
PO Box 4485
Ventura, CA 93007

Pyramid Pool and Spa Service
PO Box 313
Ventura, CA 93003

Genares
PO Box 3338
Grapevine, TX 76099

Staples Business Advantage
Dept DET
PO Box 83689
Chicago, IL 60696-3689

ProFillment
2432 S Sheridan
Wichita, KS 67217

Mullen & Henzell LLP
112 E Victoria Street
Santa Barbara, CA 93101

Mancini and Associates
15303 Ventura Blvd   Ste 600
Sherman Oaks, CA 91403

PQL
2285 Ward Avenue
Simi Valley, CA 93065

Cintas
97627 Eagle Way
Chicago, IL 60678-9760

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

American LegalNet, Inc.
www.FormsWorkflow.com