**GRIFFITH & THORNBURGH, LLP**
ATTORNEYS AND COUNSELORS
8 EAST FIGUEROA STREET, SUITE 300
POST OFFICE BOX 9
SANTA BARBARA, CA 93102-0009
TELEPHONE: 805-965-5131
TELECOPIER: 805-965-6751

(SPACE BELOW FOR FILING STAMP ONLY)

Joseph M. Sholder, Bar No. 126347

Attorneys for Oxnard GSRS Holdings, LLC, Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

| | |
|---|---|
| In re<br><br>Oxnard GSRS Holdings, LLC,<br><br>DEBTOR and DEBTOR-IN-POSSESSION. | BK No. ND 09-12665-RR<br><br>Chapter 11<br><br>DEBTOR'S MOTION FOR AUTHORITY TO ENTER INTO CONDITIONAL FORBEARANCE AND RELEASE AGREEMENT WITH U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID DODART<br><br>Date: January 19, 2011<br>Time: 10:00 a.m.<br>Place  1415 State Street,<br>Courtroom 201<br>Santa Barbara, CA. |

Debtor and debtor in possession Oxnard GSRS Holdings, LLC, ("Oxnard") seeks an order of this court authorizing Oxnard to enter into the Conditional Forbearance and Release Agreement and the related documents (the "Forbearance Agreement") which is attached hereto as Exhibit 1.

- 1 -

In essence, the Forbearance Agreement gave Oxnard until November 30, 2010, to satisfy its $10.35 million obligation of U.S. Bank National Association, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1 (the "Bank")[1] by paying the Bank $5,300,000 and certain other expenses on or before November 30, 2010. If Oxnard does not pay the Bank the $5,300,000 and other expenses by November 30, 2010, then the Bank gets automatic relief from the automatic stay to pursue its rights and remedies against Oxnard. Those remedies would include such measures as foreclosing upon Oxnard's hotel, the primary asset in this case, or arranging for a deed in lieu of foreclosure.

Although this motion is being filed after the November 30, 2010 deadline, the parties had agreed upon the basic terms of the Forbearance Agreement in or about March of 2010. The delay in presenting this motion was due to the need to negotiate the details of the parties' agreement and to document it. During the negotiation and documentation process, the Bank did forbear from seeking stay relief or taking other steps (such as seeking dismissal of the case) to enable it to exercise its rights and remedies. Thus, as of the filing of this motion, Oxnard has had about nine months since the parties reached an agreement in principle for a six-month grace period for Oxnard to assemble the payoff amount (and about a year and a half since the case

---

[1] As noted, below, this figure is approximate and does not include the substantial prepayment consideration for which Oxanrd might also be liable.

-2-

was filed, to market the property or otherwise resolve its financial problems).

Oxnard believes that authorizing it to enter into the Forbearance Agreement is in the best interests of this estate because had Oxnard not entered into the Forbearance Agreement the Bank may have promptly sought and may have obtained immediate relief from the automatic stay or taken other steps to end the case, such as seeking dismissal.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A.   FACTS**

**1.   Assets and Liabilities**

Oxnard filed this case on July 6, 2009 and continues to manage and operate its business as a debtor in possession.

Oxnard currently operates a 57-unit extended stay hotel (the "Hotel") and has done so with the use of cash collateral pursuant to a series of stipulations with the Bank.

The Bank is currently owed approximately $8.75 million in unpaid principal, plus interest and other charges totaling about another $1.6 million.  Prepayment consideration under the loan documents would be about another $2.386 million.  The scheduled unsecured creditor claims in this case total $56,782.46.

Oxnard has not appraised the Hotel.  But it is likely that the Hotel is worth less than the amount of the Bank's claim since (as noted in section 2 below), the Hotel hasn't generated sufficient income to make even full payments of interest, let alone any amortization, on the Bank's claim and, as of the date

-3-

of this motion, Oxnard has not yet raised the $5,300,000 payment provided for in the Forbearance Agreement despite essentially marketing the Hotel since even before filing this case. Oxnard has scheduled personal property (furniture, fixtures, equipment and cash) worth $160,644.51.

### 2. The Operations of the Hotel

The Hotel has more or less operated consistently with the revised cash collateral budget previously submitted to this court. From those operations, Oxnard has been able to pay the expenses of operating the Hotel but it has only been able to make partial interest payments to the Bank and has not made a full debt service payment since November of 2008, except for one such payment in January of 2009.

### 3. The Forbearance Agreement[2]

The parties to the Forbearance Agreement are Oxnard, the Bank and David Dodart ("Dodart"). Dodart is the managing member of Oxnard GSRS, LLC which is the managing member of Oxnard. Dodart also guaranteed Oxnard's debt to the Bank. Some of the provisions of the Forbearance Agreement pertain to Dodart's obligation to the Bank but those provisions are not discussed in this motion.

---

[2] The following is a summary of the main terms of the Forbearance Agreement and is not intended to modify any provision in the Forbearance Agreement. If this summary is inconsistent with the terms of the Forbearance Agreement, the terms of the Forbearance Agreement control.

-4-

As to Oxnard, the Forbearance Agreement gives Oxnard until November 30, 2010 to pay the Bank $5,300,000 plus certain legal costs in full satisfaction of the Bank's debt. See Forbearance Agreement at ¶1 (definition of Expiration Date and Lien Release Payment); ¶2(a), (c) and (d); ¶3(a). A portion of the $5,300,000 payment may be paid by the Bank crediting Oxnard with one-half of the $369,423 in debt service reserve funds and the insurance and capital expenses reserve funds held by the Bank. See Forbearance Agreement at ¶1 (definitions of Debt Service Reserve Funds, Insurance Reserve Funds and Reserve Funds); ¶3(b).

If Oxnard fails to pay the Bank the $5,300,000 plus certain legal costs by November 30, 2010, then the Bank can exercise its rights and remedies against Oxnard, including, without limitation, foreclosure, appointment of a rents and profits receiver or acceptance of a deed in lieu of foreclosure. See Forbearance Agreement at ¶6. Those remedies include this court entering an order granting the Bank relief from the automatic stay and the Bank completing its foreclosure sale of the Hotel. Id.

The terms of the Forbearance are binding upon any trustee appointed in this case. See Forbearance Agreement at ¶7(b). And any bankruptcy plan proposed by Oxnard needs to be consistent with the rights granted to the Bank. Id. at ¶7(c).

**B.    ARGUMENT**

The Forbearance Agreement represents a negotiated compromise between Oxnard and the Bank of the Bank's rights to,

-5-

among other things, seek relief from the automatic stay. This court has authority to approve that compromise. See Fed.R.Bankr.P. 9019.

The court should approve the proposed compromise if it is fair and equitable. Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988); In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir.) *cert. denied sub nom.*, Martin v. Robinson, 479 U.S. 854 (1986). In making this determination, the court should look at the following factors:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; (d) the paramount interests of the creditors and proper deference to their reasonable views in the premises.

Id.

Here, the key factors are the first and fourth. On the likelihood of success on the merits, litigating a relief from stay motion with the Bank would have been rough sledding because it would have been difficult to meet the effective reorganization requirement in 11 U.S.C. §362(d)(2)(B). There are two reasons for this.

First, the Hotel could not service the Bank's debt. This made it problematic to pursue a strategy to get investor money to cure the defaults of the Bank's loan and to propose a plan that continued to pay the Bank's debt pursuant to its terms: that is, to leave the Bank unimpaired. Second, there is no equity in the Hotel so the Bank would have had an unsecured

-6-

1 deficiency claim.  Under applicable Ninth Circuit law (In re
2 Barakat, 99 F.3d 1520, 1525 (9th Cir. 1996)), there is a
3 question whether Oxnard could have separately classified the
4 Bank's unsecured deficiency claim.  If not, then the Bank would
5 have controlled both classes of creditors, Oxnard would not
6 have achieved an impaired consenting class of creditors and
7 Oxnard could not have confirmed a plan over the Bank's
8 objection.  See 11 U.S.C. §1129(a)(10), §1129(b)(1).

9     For these reasons, it was and is in the best interests of
10 creditors per the fourth factor to enter into the Forbearance
11 Agreement with the Bank.  Doing so allowed Oxnard close to a
12 year to try and raise money to make the $5,300,000 payment to
13 the Bank, the only way the Bank's debt was going to be
14 satisfied and the only way unsecured creditors had a chance of
15 getting paid.  In addition, Oxnard has had, in fact, well over
16 a year since it filed this case to find a solution to its
17 financial problems that could support a reorganization, but has
18 been unable to do so.

19     Furthermore, because Oxnard has failed to make the agreed-
20 upon $5,300,000 payoff by November 30, 2010, Oxnard believes
21 that the Bank is entitled the granting of stay relief
22 concurrent with the approval of this Stipulation unless the
23 Bank, in its sole discretion, has agreed upon some other
24 arrangement with Oxnard (subject also to Court approval).

25 **C.    CONCLUSION**

26     For these reasons, Oxnard submits that its motion should
27 be granted and, absent an intervening contrary agreement

-7-

1 | between the parties, a stay relief order in favor of the Bank
2 | should be entered.

4 | DATED: December 15, 2010          GRIFFITH & THORNBURGH, LLP

By _____
JOSEPH M. SHOLDER
Attorneys for Debtor and
Debtor-in-Possession

- 8 -

**DECLARATION OF DAVID DODART**

David Dodart declares:

1.  I am the managing member of Oxnard GSRS, LLC. Oxnard GSRS, LLC is the sole member and is the managing member of debtor and debtor-in-possession Oxnard GSRS Holdings LLC ("Oxnard"). I have also guaranteed Oxnard's debt to U.S. Bank National Association, not individually but solely as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1 (the "Bank").

2.  I personally participated in the negotiations leading to the Conditional Forbearance and Release Agreement and the related documents (the "Forbearance Agreement") which is the subject of the attached motion and which (sans exhibits) is attached hereto as Exhibit 1. I also monitor the management activities of ETC Management, the management company that manages the Hotel on a daily basis. As such, I have personal knowledge of the facts stated in this declaration and could and would competently testify thereto if called upon to do so.

3.  Oxnard filed this case on July 6, 2009 and continues to manage and operate its business as a debtor in possession. Oxnard currently operates a 57-unit extended stay hotel (the "Hotel") and has done so with the use of cash collateral pursuant to a series of stipulations with the Bank.

4.  The Hotel has more or less operated consistently with the revised cash collateral budget previously submitted to this court. From those operations, Oxnard has been able to pay the expenses of operating the Hotel but it has only been able to

-9-

make partial interest payments to the Bank and has not made a full debt service payment since November of 2008, except for one such payment in January of 2009.

5. The Bank is currently owed approximately $8.75 million in unpaid principal, plus interest and other charges totaling about another $1.6 million. The scheduled unsecured creditor claims in this case total $56,782.46.

6. Oxnard has not appraised the Hotel. But it is likely that the Hotel is worth less than the amount of the Bank's claim since the Hotel hasn't generated sufficient income to service the Bank's claim, nor has Oxnard been able to raise the $5,300,000 payment provided for in the Forbearance Agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 14th day of December, 2010 at Santa Barbara, California.

_____
DAVID DODART

- 10 -

C:\Documents and Settings\aall\Local Settings\Temporary Internet Files\OLK4B\Forbearance Stipulation (supersedes 2921496) - 1.DOC